UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**CELIA GREENGRASS,**

        Plaintiff,

   -vs-                                             Case No. 12-C-212

**INTERNATIONAL MONETARY**
**SYSTEMS, Ltd.,**

        Defendant.

## DECISION AND ORDER

In public disclosures required by the Securities and Exchange Commission, International Monetary Systems, Ltd. ("IMS") referred to a discrimination complaint filed by Celia Greengrass, a former IMS employee, as meritless. Greengrass claims that this was unlawful retaliation in violation of Title VII. Now before the Court are cross-motions for summary judgment. For the reasons that follow, IMS's motion is granted, Greengrass's motion is denied, and this matter is dismissed.

## BACKGROUND

IMS is a domestic corporation with its principal office located in New Berlin, Wisconsin. IMS acquires, owns, manages and operates trade exchanges and other related businesses. Trade exchanges, or barter networks, are financial service firms which permit companies and individuals to exchange goods and services utilizing an electronic currency known as "trade dollars." IMS services more than 18,000 barter customers.

Greengrass began working for IMS on January 15, 2007. On September 10, 2007, Greengrass made a written complaint alleging harassing behavior by Kevin Anderson, IMS's Las Vegas General Manager. Greengrass quit on November 25, 2007.

On January 20, 2008, Greengrass filed a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC"). Greengrass alleged that IMS discriminated against her and other female employees because of their sex and discriminated against her because of her national origin (Brazilian). Greengrass also alleged that IMS retaliated against her with respect to the terms and conditions of her employment because of her complaint of discrimination and constructively discharged her.

IMS is a publicly traded company and is legally required to make certain filings with the SEC. In its 2008 SEC disclosures, IMS did not refer to Greengrass's EEOC complaint. Instead, IMS stated as follows, referring to a different complaint:

> On February 26, 2008, a former employee of the company's Connecticut office file[d] a lawsuit with the *Equal Employee Opportunity Commission – Connecticut Commission on Human Rights and Opportunities*, alleging that her termination from the company was based on age discrimination. The lawsuit is in the initial stages and no specific claim for damages has been identified in the suit. The Company believes the lawsuit is without merit and intends to vigorously oppose any settlement.
>
> There are no other material pending legal proceedings involving IMS or any of its properties.

ECF No. 17, Plaintiff's Proposed Findings of Fact ("PPFF"), ¶ 15 (disclosure signed

March 28, 2008); ¶ 21 (signed May 19, 2008); ¶ 22 (signed August 8, 2008); ¶ 25 (signed November 11, 2008).

However, in a disclosure dated April 6, 2009, IMS stated as follows: "On January 20, 2008, Celia Greengrass filed a sexual harassment complaint with the [EEOC]. The claim is still under investigation by the EEOC but IMS believes the claims to be meritless and will vigorously defend itself." PPFF, ¶ 26. The disclosure went on to identify two other individuals who had filed discrimination claims against IMS. *Id.*[1] The disclosure also mentioned the claimant in a wage claim action and the plaintiff in a claim for breach of contract. *Id.*[2] These disclosures were repeated in the "Legal Proceedings" portion of IMS's Form 10-K/A Amendment No. 1 Annual Report. *Id.*, ¶¶ 28-29. They were also repeated in a quarterly disclosure dated May 14,

---

[1] "On March 20, 2008, Joan Mansfield filed a complaint alleging age discrimination with the Connecticut Commission on Human Rights and Opportunities and the [EEOC]. IMS has reached a settlement with Ms. Mansfield and the complaints will be dismissed. On May 29, 2008, John Lounsbury filed a claim of sexual harassment with the Connecticut Commission on Human Rights and Opportunities and the [EEOC]. The claim is still under investigation by the CHRO but IMS feels the claim is without merit and will vigorously defend itself."

[2] "On September 25, 2008, IMS was notified of a wage claim filed with the Canadian Ministry of Labour by Gerard Domet in the amount of $10,400.00. The claim is still under review by the Ministry of Labour. There may be wages due to Mr. Domet; however, the amount is substantially less than the amount claimed. On September 30, 2008, WRS, Inc D/B/A WRS Motion Picture and Video Laboratory filed suit in Allegheny County, PA for breach of contract. The complaint seeks $38,649.58 in damages. The complaint against IMS is meritless; the litigation seeks payment for services provided to a former member of the Exchange, none of the services at the heart of the litigation were provided to IMS and therefore, no payment is due from IMS. A motion to dismiss this matter is pending with the court. There are no other material pending legal proceedings involving IMSL or any of its properties."

2009.  ECF No. 21-4, Greengrass Dec., Ex. U, at 18.[3]

In the next disclosure, dated August 14, 2009 for the quarter ending June 30, IMS stopped identifying Greengrass by name:

> In the ordinary course of business, the company is occasionally involved in litigation, both as plaintiff and defendant.  During the second quarter of 2009, three legal complaints in which the company was the named defendant were dismissed or settled with no material expense incurred.  Remaining open are two employment-related actions that have been filed against the company with various government agencies.  Management feels that both of the actions are without merit and is vigorously defending its position.  It is not anticipated that any material losses or settlement expense will arise relative to these pending actions.

PPFF, ¶ 37.

On September 3, 2009, the EEOC found reasonable cause to believe that Greengrass and other females as a class were subject to harassment because of their sex (female) and national origin, and that Greengrass and females, as a class, were constructively discharged because of their sex, national origin, and in retaliation for engaging in protected activity.  On September 29, 2009, EEOC faxed a letter to IMS which stated, in relevant part:

> On September 3, 2009, the District Director issued a Letter of Determination with respect to the above-referenced charge.  Having determined that there is reason to believe that violations of Title VII have occurred, the Commission now invites Respondent to join in a collective effort toward a just resolution of this matter.
>
> Enclosed is a proposed EEOC Conciliation Agreement that includes Charging Party and female class member Julia Hackathorn monetary

---

[3] PPFF ¶ 36 quotes the generic language that appears later, not the language which actually appears in the cited exhibit, identifying the plaintiffs/complainants by name.

> relief demand totaling **TWO HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($275,000).** Please review carefully with the appropriate management officials and provide a counter offer to our office by the close of business, Friday, October 9, 2009.

*Id.*, ¶ 42. Accordingly, in the third-quarter SEC disclosure, dated November 16, 2009, IMS stated as follows:

> The company is currently a defendant in two cases of note. Both are employment-related actions alleging harassment that have been filed against the company, one by the EEOC, with a proposed conciliation agreement received by the company on September 29, 2009; and the other a civil action filed in federal district court on October 14, 2009. While the maximum settlements in these cases could total as much as $230,000, management is vigorously defending its position and feels that the ultimate expense to the company relative to these matters will be much less. A provision of $40,000 has been recorded as a current estimate of future costs.
>
> Additionally, the company is plaintiff in a suit filed in April, 2009, in Federal court, against the former owner of a trade exchange the company purchased in 2005 and several former employees. The suit alleges unfair business practices and theft of trade secrets and seeks damages of approximately $1.5 million.

*Id.*, ¶ 44.

On or about December 24, 2009, the parties resolved Greengrass's EEOC complaint through conciliation. Resolution did not include rehiring of Greengrass. In the Form 10-K Annual Report for 2009, dated April 1, 2010, IMS wrote:

> In the ordinary course of business, the company is occasionally involved in litigation, both as plaintiff and defendant. Management either litigates or settles claims after evaluating the merits of the action and weighing the costs of settling vs. litigating. During 2009, the company was defendant in two cases of note. Both are employment-related actions alleging harassment that have been filed against the company, one by the EEOC and the other in federal district court. Settlement was

reached in the EEOC matter in November 2009.

*Id.*, ¶ 52. In subsequent quarterly and annual reports, IMS continued to refer generically to plaintiffs and defendants in ongoing litigation, not identifying them by name. *See, e.g.,* PPFF, ¶¶ 58, 67, 72, 74, 76, 79, 81, 84, 87, 99, 100.

After leaving IMS, Greengrass struggled to find and maintain regular employment. She currently works as a realtor in New Mexico, but has yet to make a single sale. Greengrass attributes her post-IMS employment difficulties to the SEC filings that identified her by name. Greengrass claims that a Google search of her name consistently brings-up multiple entries on the first page regarding IMS's SEC filings that include her name. One says, "On January 20, 2008, Celia Greengrass filed a sexual harassment complaint with the [EEOC]. The claim is . . ." One recruiter told Greengrass she was "unemployable" due to the information about her on the internet.

Accordingly, on September 28, 2010, Greengrass filed an additional EEOC complaint, alleging that IMS retaliated against her because of her previous complaint. On March 25, 2011, EEOC found "reasonable cause to believe that there is a violation of Title VII of the Civil Rights Act of 1964, as amended, in that the Respondent retaliated against Charging Party by providing information regarding her previous Charge of Discrimination on a public record to preclude her from obtaining new employment." ECF No. 20-6, at 59. Conciliation failed this time, so the EEOC issued a right-to-sue letter, resulting in the instant lawsuit.

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003). When confronted by cross-motions for summary judgment, "inferences are drawn in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Prop., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008). The Court considers each party's motion individually to determine if that party has satisfied the summary judgment standard. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d 557, 583-84 (N.D. Ind. 2010).

A Title VII plaintiff can prove retaliation using either the direct or indirect method. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Greengrass chooses the direct method, under which she must provide evidence that she engaged

- 7 -

in a statutorily protected activity, that IMS subjected her to an adverse employment action, and that there is a causal connection between the two events. *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

Regarding the first element, Greengrass's January 20, 2008 EEOC complaint is a protected activity under Title VII. *Smart v. Ball State Univ.*, 89 F.3d 437, 440-41 (7th Cir. 1996). Regarding the second element, Greengrass argues that referring to her by name and calling her allegations "meritless" in publicly-available SEC filings is a materially adverse employment action. IMS disagrees, but the "materially adverse action" required for a retaliation claim is broader than the "adverse employment action" required for a discrimination claim. *Benuzzi v. Bd. Of Educ. Of Chi.*, 647 F.3d 652, 665 (7th Cir. 2011). For purposes of a retaliation claim, "an employer's action will be actionable . . . if it would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). Moreover, retaliation can be actionable in the post-employment context. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 573 (7th Cir. 2012) ("post-termination acts of retaliation may be actionable under Title VII") (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)).

Setting aside the issue of materiality, Greengrass cannot proceed to trial because she has no evidence on causation. To demonstrate a "causal link" between the protected activity and the adverse action, Greengrass must show that IMS "would not have taken the adverse action but for [her] protected activity." *King v. Preferred*

- 8 -

*Tech. Group*, 166 F.3d 887, 892 (7th Cir. 1999). Put another way, Greengrass must show that she "'engaged in protected activity . . . and as a result suffered the adverse employment action of which [she] complains' through the use of direct and/or circumstantial evidence." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012) (quoting *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006). Direct evidence is evidence which "if believed by the finder of fact, 'will prove the particular fact in question without reliance on inference or presumption.'" *Id.* at 972-73 (quoting *Volovsek v. Wis. Dep't of Agric., Trade & Cons. Prot.*, 344 F.3d 680, 689 (7th Cir. 2003) (internal citation omitted)). Circumstantial evidence, which allows a jury to infer retaliation, may include: (1) suspicious timing, ambiguous statements or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action. *Id.* at 973.

Greengrass has no direct evidence, so she attempts to construct a "convincing mosaic" of circumstantial evidence. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Her primary argument is based on timing, but the timing of the SEC disclosures was far from suspicious. Greengrass's complaint was filed in January of 2008, and IMS did not refer to it in any of their SEC filings until over a year later, in April and May of 2009. IMS then stopped referring to Greengrass or any other claimant by name starting in August of 2009.

Greengrass tries to connect the objectionable SEC filings to the progress of the EEOC investigation. For example, on or about January 12, 2009, IMS received notice that the EEOC wanted to conduct interviews. PPFF, ¶ 33. The next SEC filings (in April and May of 2009) were the ones identifying Greengrass by name. However, the EEOC was pursuing further information as early as July 29, 2008. PPFF, ¶ 23. Thereafter, IMS made multiple SEC filings that did not refer to Greengrass. In any event, suspicious timing, standing alone, is normally not enough to survive summary judgment. *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("Suspicious timing may be just that – suspicious – and a suspicion is not enough to get past a motion for summary judgment"); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action").[4]

Ultimately, it was uncertainty over the filing requirements, not discriminatory animus, which led to the inclusion of Greengrass's name on IMS's SEC filings. IMS's outside auditors, Webb & Co., advised greater disclosure of information related to legal proceedings, and IMS followed that advice for a short period of time. ECF

---

[4] Greengrass suggests that her settlement qualifies as protected activity, and some courts have treated an EEOC settlement as such. *See, e.g., Jackson v. Mayor & City Council of Balt. City*, Civil No JFM 08-3103, 2009 WL 2060073, at *8 (D. Md. July 14, 2009) (collecting cases). Greengrass then attempts to connect her late-2009 settlement with an amended Form 10-K for the fiscal year 2008 that was filed on March 2, 2010, re-stating the "Legal Proceedings" information from the original form that was filed in April of 2009. This amended form was re-filed only because the SEC asked for it to be re-filed, not because of a discriminatory motive. ECF No. 44, Defendant's Proposed Material Facts, ¶¶ 21-22. And once again, suspicious timing is not enough to defeat summary judgment.

- 10 -

Case 2:12-cv-00212-RTR   Filed 07/28/13   Page 10 of 12   Document 68

No. 49, IMS's Proposed Additional Material Facts ("DAMF"), ¶ 5. However, David Powell (CPA/Risk Manager) raised concerns about providing detailed information. Citing these concerns, Donald Mardak (President/CEO) emailed Danny Weibling (CFO) on August 13, 2009, directing him to delete all references to names and specific cases. DAMF, ¶¶ 7, 9. IMS continued to fine-tune the language, but the practice of identifying plaintiffs or other litigants by name was over.

Greengrass also cites various comments by IMS employees that are somewhat disparaging towards Greengrass and/or the EEOC process. These innocuous comments do not betray an unlawful motive. *See, e.g.,* PPFF, ¶ 48 ("Apparently they can't read since we only offered Julia $5,000. So do we reject this and tell them to file suit?"); ¶ 52 ("Who'd have thought a government employee would be working on a holiday? Our 10 days started 12-24-09"). In fact, some of the cited comments post-date the objectionable disclosures and are related to the second EEOC complaint, not the protected activity that is the subject of this lawsuit. *Id.*, ¶ 73 (October 12, 2010 letter to the EEOC: "The charge of retaliation by Ms. Greengrass is nothing more than an attempt to extort more money from IMS"); ¶ 78 (e-mail dated May 23, 2011). Greengrass also notes the absence of specific names in any SEC filing that does not include Greengrass's name. This does not suggest a discriminatory motive. When IMS thought that they needed to include names, everyone's name was included, not just Greengrass. Her "mosaic" of circumstantial evidence is far from convincing.

There being no genuine factual dispute on the issue of causation, IMS's motion for summary judgment [ECF No. 24] is **GRANTED**. Greengrass's motion for summary judgment [ECF No. 15] is **DENIED**, and her motion to strike the expert report of Professor Edward Fallone [ECF No. 30] is **DENIED** as moot. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2013.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**