# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CELIA GREENGRASS,**

    Plaintiff,

-vs-                                Case No. 12-C-212

**INTERNATIONAL MONETARY SYSTEMS, Ltd.,**

    Defendant.

## DECISION AND ORDER

This employment discrimination case is scheduled for trial on October 13, 2015. Celia Greengrass alleges that her former employer, International Monetary Systems, retaliated against her for filing an EEOC complaint by describing her complaint as "meritless" in its annual SEC filings. IMS filed motions in limine, which are addressed herein.

First, IMS seeks to exclude testimony that a recruiter named Chris informed Greengrass that she was "unemployable." Greengrass counters that Chris's comment is excepted from the hearsay rule[1] as an excited utterance. Fed. R. Evid. 803(2). This exception applies when a startling event or

---

[1] Greengrass also argues that the statement is not being offered for the truth of the matter asserted, but rather that the comment was "made at all by a professional in the field." The relevant non-hearsay purpose would seem to be effect on the listener– i.e., that Greengrass was justified in not pursuing mitigation efforts because she was told by a recruiter that such efforts would be fruitless. Since the statement could also be offered to prove that Greengrass was (or is), in fact, unemployable, the Court will proceed further in its analysis.

condition occurrs, the statement was made while the declarant was under the stress of excitement caused by the event or condition, and the statement relates to the startling event or condition. *United States v. Moore*, 791 F.2d 566, 570 (7th Cir. 1986).

The statement in question occurred while Greengrass was attending a Hispanic Chamber of Commerce event in Albuquerque, New Mexico. There, Greengrass met Chris and explained the legal proceedings related to this case, including the fact that she had been identified by her name and lawsuit in IMS's SEC filings and has since been unable to find work. Listening to such a tale may not seem to be a startling event, but the standard is subjective, not objective. "Although startling events are frequently totally unexpected happenings such as an accident or act of criminal conduct, they need not be, so long as the event actually has a startling impact on the declarant." *Moore*, 791 F.2d at 571 n.2. "The courts seem to look primarily to the effect upon the declarant and, if satisfied that the event was such as to cause adequate excitement, the inquiry is ended." *Id.* (quoting McCormick on Evidence § 705 (2d ed. 1972)). Thus, the "appearance, behavior and condition of the declarant may establish that a startling event occurred," as can the "declaration itself …" *Id.* at 571.

It is doubtful that a recruiter would flatly tell someone that they are unemployable upon first encounter at a recruiting/employment event. Such a

statement infers that prospective employers, including those that Chris recruits for, would refuse to hire Greengrass for unlawful reasons.[2] Therefore, the declaration itself establishes that the event was startling. Also, Chris's demeanor demonstrates that she was startled by the exchange:

> Q. Who is the recruiter that told you you were unemployable?
>
> A. All I have is her first name. Not even the name, her nickname. Chris. I don't know if it's Christine, Krista, I don't know. I met her in [a] chamber of commerce event for the Hispanic chamber of commerce, Hispanic chamber of commerce in Albuquerque.
>
> And she talked to me. She was very nice, she was very warm. She wouldn't give me her card; I don't blame her. *And she disappeared ten minutes after talking to me. I mean ten seconds. She just took off immediately when she realized what she's done.* I don't have her name, I don't know who she is.
>
> Q. What do you mean, "when she realized what she's done?"
>
> A. She realized she said too much to me. She admitted that she wouldn't interview me because I wasn't employable.
>
> Q. So she actually told you she wouldn't take you on as a client?
>
> A. Yes. She couldn't interview me because she said there's no point, you're unemployable.
>
> …
>
> Q. She immediately, if I got this straight, she immediately

---

[2] In this respect, the statement is also admissible as a statement against interest, because a recruiter/headhunter has a pecuniary interest in finding viable employment candidates. Fed. R. Evid. 804(b)(3)(A).

- 3 -

>           stopped talking after she told you you were unemployable
>           and she couldn't interview you?
>
>     A.    Yes.

Greengrass Dep. at 55-57 (emphasis added). Therefore, the Court finds that all of the factors are present for the exception to apply: a statement that relates to a startling event was made while under the stress of excitement caused by the event. Rule 803(2). However, IMS also argues, and the Court agrees, that the statement should be excluded because it amounts to an unqualified expert opinion. *See* Fed. R. Evid. 701, 702.

Rule 701 provides that lay testimony "in the form of an opinion" is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The last requirement is intended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009). The Rules "do not distinguish between expert and lay *witnesses*, but rather between expert and lay testimony." *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (emphasis added).

Lay testimony "results from a process of reasoning familiar in everyday

- 4 -

life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Christian*, 673 F.3d at 709 (quoting Rule 701 advisory committee's note (2000 amends.)). Nothing is known about Chris except for the fact that she met Greengrass at an employment event and introduced herself as a "recruiter." Chris expressed an opinion, which Greengrass attempts to introduce through her own testimony, but Greengrass has not attempted to substantiate the reasoning process behind that opinion. Therefore, Greengrass failed to prove that the admissibility requirements for lay opinion testimony are satisfied, and the opinion must be excluded. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) ("The burden is on the party wishing to introduce lay opinion testimony to establish the proper foundation").

As a fallback, Greengrass attempts to introduce the statement through her own expert witness, Timothy Riley. Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on the subject, they need not be admissible for the opinion to be admitted. *But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.*

Fed. R. Evid. 703 (emphasis added). The "Rule 703 approach" is "based on the idea that the disclosure of basis evidence can help the factfinder understand

- 5 -

the expert's thought process and determine what weight to give the expert's opinion." *Williams v. Illinois*, 132 S. Ct. 2221, 2240 (2012). However, the probative value in helping the jury evaluate Riley's opinion does not substantially outweigh the prejudicial effect of introducing yet another (purported) expert opinion, one that cannot be probed through cross-examination. Therefore, Chris's opinion cannot be introduced through Riley's testimony.

IMS argues further that the Court should exclude evidence of offers of employment that have been rescinded. Put otherwise, IMS seeks an order precluding Greengrass from characterizing her disappointing interview results as rescinded offers of employment. On cross-examination, IMS can question Greengrass about whether a particular employer actually extended an offer of employment. IMS's citation to Fed. R. Evid. 104(b), which provides that when the "relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist," is inapt. The relevance of Greengrass's job search does not depend upon whether an offer was extended and then rescinded. An employer could have made up its mind that it was not going to hire Greengrass, but went ahead with the interview anyway in an effort to avoid raising an inference of discrimination.

IMS also seeks to preclude evidence of Greengrass's inability to obtain real estate listings or sales in her current job as a real estate broker.

- 6 -

Greengrass testified that she could not make any sales because "people look people up on the internet." IMS asserts that her suspicion, standing alone, is not enough to link the SEC listing with her sales difficulties. However, the evidence is clearly admissible, and it is for the jury to decide whether Greengrass proved the elements of her claim under the appropriate burden of proof.

The balance of IMS's motion – to hold evidentiary hearings outside of the presence of the jury, and to limit Mr. Riley's expert opinions to those in his report and deposition testimony – is unopposed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** IMS's motion in limine [ECF No. 84] is **GRANTED-IN-PART** and **DENIED-IN-PART**.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2015.

BY THE COURT:

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**